Approved: _____
Ryan B. Finkel / Alexander Li / Andrew Rohrbach
Assistant United States Attorneys

Before:  HONORABLE KATHARINE H. PARKER
         United States Magistrate Judge
         Southern District of New York

- - - - - - - - - - - - - - - - - x
                                  :   **COMPLAINT**
UNITED STATES OF AMERICA          :
                                  :   Violations of 18 U.S.C.
        - v. -                    :   §§ 924(c)(1)(A)(i), and 2;
                                  :   21 U.S.C. §§ 846,
RYAN FRANCIS,                     :   841(b)(1)(A), (b)(1)(D)
                                  :
                Defendant.        :   COUNTY OF OFFENSE:
                                  :   NEW YORK
- - - - - - - - - - - - - - - - - x

SOUTHERN DISTRICT OF NEW YORK, ss.:

        MICHAEL HILL, being duly sworn, deposes and says that he is a Special Agent with Homeland Security Investigations ("HSI") and charges as follows:

## COUNT ONE
### (Narcotics Conspiracy)

        1.   From in or about November 2019 up to and including in or about December 2020, in the Southern District of New York and elsewhere, RYAN FRANCIS, the defendant, and others known and unknown, intentionally and knowingly did combine, conspire, confederate, and agree together and with each other to violate the narcotics laws of the United States.

        2.   It was a part and an object of the conspiracy that RYAN FRANCIS, the defendant, and others known and unknown, would and did distribute and possess with intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

3. The controlled substances that RYAN FRANCIS, the defendant, conspired to distribute and possess with intent to distribute were (i) 280 grams and more of mixtures and substances containing a detectable amount of cocaine base, in violation of Title 21, United States Code, Section 841(b)(1)(A); and (ii) a quantity of marihuana; in violation of Title 21, United States Code, Section 841(b)(1)(D).

(Title 21, United States Code, Section 846.)

## COUNT TWO
### (Firearms Use, Carrying, and Possession)

4. From in or about November 2019 up to and including in or about December 2020, in the Southern District of New York, and elsewhere RYAN FRANCIS, the defendant, during and in relation to a drug trafficking crime for which he may be prosecuted in a court of the United States, namely, the drug trafficking conspiracy charged in Count One of this Complaint, knowingly did use and carry a firearm, and, in furtherance of such crime, did possess a firearm, and did aid and abet the use, carrying, and possession of a firearm.

(Title 18, United States Code, Sections 924(c)(1)(A)(i) and 2.)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

5. I am a Special Agent with HSI and I have been personally involved in the investigation of this matter. This affidavit is based upon my personal participation in the investigation of this matter, my conversations with other law enforcement officers, witnesses, and other individuals, as well as my review of documents, photographs, videos, and recordings. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

OVERVIEW OF THE DTO

6. HSI and the NYPD (collectively, the "Investigating Agencies") are investigating a drug trafficking organization ("DTO") operating in Upper Manhattan, New York. Specifically, HSI and the NYPD are aware of a particular area in the vicinity of West

123rd Street and 7th Avenue in Upper Manhattan ("Location-1"), where a large number of individuals who sell narcotics, including cocaine base (crack cocaine), congregate. On or about November 24, 2020, a Grand Jury in this District charged 14 members of the DTO in an indictment with violating Title 21, United States Code, Sections 846, 841(b)(1)(A) (the "Indictment"). One of the suspected members of the DTO, who is charged in the Indictment is a particular individual ("CC-1"). RYAN FRANCIS, the defendant, is believed to source narcotics to CC-1 and others in Manhattan, New York for further distribution. Indeed, based on surveillance and wire intercepts, the Investigating Agencies believe that CC-1 distributes narcotics to dozens of individuals in Upper Manhattan – and many of those individuals then distribute to drug users.

7. During the course of the investigation, law enforcement has made numerous controlled purchases of narcotics from CC-1. A confidential source ("CS-1")[1] typically arranged these controlled purchases by making monitored calls to CC-1 at a particular telephone number (the "CC-1 Telephone").

### RYAN FRANCIS INTERCEPTED CALLS WITH CC-1, AND IDENTIFICATION OF RYAN FRANCIS

8. On or about September 9, 2020, and on or about October 9, 2020, the Honorable Nicholas G. Garaufis and the Honorable Eric R. Komitee, United States District Judges for the Eastern District of New York, respectively, issued orders authorizing the interception of wire and electronic communications occurring to and from the CC-1 Telephone. Pursuant to these orders, HSI intercepted the following telephone calls, among others, between the CC-1 Telephone and RYAN FRANCIS, the defendant, using a particular phone number ("the FRANCIS Telephone").

a. On or about September 13, 2020, at approximately 6:13 p.m., CC-1, using the CC-1 Telephone, received a call from FRANCIS, using the FRANCIS Telephone. Based on my review of a draft transcript, I know that the following conversation occurred, in substance and in part:

---

[1] CS-1 has been providing information and otherwise assisting the NYPD in narcotics investigations since approximately August 2018. CS-1 has numerous prior criminal convictions, principally for narcotics crimes and once for destruction of evidence, and is a paid informant. The information provided by CS-1 has been reliable and corroborated by other evidence in this case, including recordings of telephone calls and law enforcement observations of CS-1 conducting narcotics purchases.

3

| | |
|---|---|
| **CC-1:** | Yo! |
| **FRANCIS:** | What's up with it? |
| **CC-1:** | I don't know. How is the other thing? |
| **FRANCIS:** | I rather [U/I] tomorrow, wait and see how that is. |
| **CC-1:** | Alright, 'cause, uh, I'm almost dead. |
| **FRANCIS:** | A'ight, I could get you... |
| | [VOICES OVERLAP] |
| **CC-1:** | Between me and this n[----] [U/I] I'm almost dead. |
| **FRANCIS:** | I could get, I mean, I could get the same level and not because the other one ain't gonna be as good anyway. Those ones ain't gonna be no where as good anyways. Actually, I'ma hit you right back, I'ma see [STAMMERS] what's on that level you got. [U/I]. |
| | [VOICES OVERLAP] |
| **CC-1:** | That was, that was, that was Barry White, I said, that was Barry White that was there. You like Barry White. |
| | [VOICES OVERLAP] |
| **FRANCIS:** | You got Barry White. But, yeah, the other ones were a lower level. You want that [U/I] if you want to be low. I'mma hit you right back. |
| | [VOICES OVERLAP] |
| **CC-1:** | Nah, I don't want no lower, no lower level. |
| **FRANCIS:** | Yeah, I'mma get that. I'ma get the Barry. I'ma, I'ma hit him right now, see 'cause I was [U/I]. |

4

```
                    [VOICES OVERLAP]

     CC-1:          Okay.

     FRANCIS:       [U/I]. Alright [U/I].
```

   b. Based on my training and experience, and from my involvement in this investigation, including my review of prior and subsequent intercepts, I believe that FRANCIS told CC-1 that FRANCIS would be receiving a delivery of narcotics the next day ("tomorrow, wait and see how that is"). CC-1 answered that he was almost out of narcotics ("I'm almost dead"). FRANCIS assured CC-1 that he would get narcotics that were of the same quality ("level") as a prior order, but added that FRANCIS needed to check the quality ("I'ma see . . . what's on that level you got"). CC-1 asked for "Barry White," which is a term that I know, through my training and experience, to be a term commonly used to refer to cocaine. FRANCIS offered low quality cocaine ("a lower level"), but CC-1 declined, stating that he did not want low quality narcotics ("I don't want no lower, no lower level"). FRANCIS reassured CC-1 that he would get high quality narcotics ("Yeah, I'mma get that")

   c. On or about September 21, 2020, at approximately 8:24 p.m., CC-1, using the CC-1 Telephone, received a call from FRANCIS, using the FRANCIS Telephone. Based on my review of a draft transcript, I know that the following conversation occurred, in substance and in part:

```
          CC-1:          Hello.

          FRANCIS:       What up [CC-1 alias]?

          CC-1:          Where you at?

          FRANCIS:       I'm on the block.

          CC-1:          What car you in- what car you in now?

          FRANCIS:       I'm on the side, I'm on [U/I] other
                         side.

          CC-1:          Who—where you at? Around Chinese?

          FRANCIS:       Yeah, yeah.

          CC-1:          Alright.

          FRANCIS:       Bring those- bring those [U/I]
```

| | |
|---|---|
| **CC-1:** | Huh? |
| **FRANCIS:** | Bring me-bring me-bring me some weed of [U/I] |
| | [VOICES OVERLAP] |
| **CC-1:** | What you talking about? I ain't got no more. |
| **FRANCIS:** | Oh, no? |
| **CC-1:** | Yeah, I'll talk to you when I see you. |
| **FRANCIS:** | Okay, okay, okay, okay, okay. |

  d. Based on my training and experience, and from my involvement in this investigation, including my review of prior and subsequent intercepts and physical surveillance (described below), I believe that CC-1 asked if FRANCIS was by a Chinese restaurant ("Around Chinese?"). FRANCIS confirmed that he was ("Yeah, yeah"), and asked CC-1 to bring him marijuana ("bring me some weed"). CC-1 declined ("I ain't got no more") and advised FRANCIS they would discuss when they met in person ("I'll talk to you when I see you").

  e. Based on my discussions with other law enforcement agents and my review of reports and records, I know that on or about September 21, 2020, at approximately 8:34 p.m. (i.e., approximately two minutes later), a law enforcement officer ("Officer-1") observed CC-1 talking to FRANCIS next to a vehicle (the "FRANCIS Vehicle") that was double-parked in front of a Chinese restaurant located in the vicinity of 123rd Street and 7th Avenue, in Manhattan. Officer-1 searched law enforcement databases and learned that the FRANCIS Vehicle is registered to a woman and the address of a particular apartment in Hackensack, New Jersey (the "FRANCIS Apartment"), which I believe, as further explained below, is where FRANCIS resides.

  f. Officer-1, who observed FRANCIS by the Chinese restaurant, confirmed his identity by reviewing a prior arrest photograph in an NYPD database.

  g. At approximately 9:33 p.m., location information for the FRANCIS Telephone, obtained pursuant to a judicially-authorized warrant, indicated that the phone was using a cellular phone tower in the vicinity of Location-1, in Manhattan, further confirming that the individual observed by Officer-1 was FRANCIS.

## RYAN FRANCIS USES THE FRANCIS VEHICLE IN FURTHERANCE OF DRUG TRAFFICKING

9.   On or about September 24, 2020 and November 9, 2020, the Honorable Edward S. Kiel, United States Magistrate Judge for the District of New Jersey, signed a warrant authorizing law enforcement officers to place a tracking device on the FRANCIS Vehicle (the "Car Tracker").

   a.   Information received from the Car Tracker shows that RYAN FRANCIS, the defendant, frequently travels from the vicinity of the FRANCIS Apartment to areas in Manhattan known for narcotics trafficking.  Based on my review of information from the Car Tracker, and as further described below, since on or about September 24, 2020, the FRANCIS Vehicle has traveled from the FRANCIS Apartment to areas in Manhattan, which based on my training and experience and my involvement in this investigation are known to be areas of narcotics activity.  In particular, the Francis Vehicle has traveled from the vicinity of the FRANCIS Apartment to Locaiton-1 an average of approximately at least twice per week (except, November 7 – 11).  As described herein I believe Francis's trips from the FRANCIS Apartment to Location-1 are for the purposes of furthering narcotics distribution by the DTO.

   b.   Indeed, physical surveillance of the FRANCIS Vehicle also evidences that FRANCIS supplies numerous individuals with narcotics in Manhattan.  For example, on or about October 13, 2020, law enforcement officers observed FRANCIS travel from the parking garage underneath the building in which the FRANCIS Apartment  is located to Manhattan.  Specifically FRANCIS was observed traveling to:

       i.   First, a particular location in Upper Manhattan where FRANCIS parked the FRANCIS Vehicle, and carried a case into a club.  FRANCIS then returned to the FRANCIS Vehicle empty handed.

       ii.   Second, FRANCIS drove the FRANCIS Vehicle to the vicinity of Location-1.

       iii.   Third, FRANCIS traveled to a location in Manhattan approximately 20 blocks north of Location-1 where he was observed meeting an individual ("Individual-1") and providing Individual-1 a bag from the trunk of the FRANCIS Vehicle.  Individual-1 then handed FRANCIS a smaller bag.

7

        iv.    Fourth, FRANCIS traveled to a particular juice bar in Manhattan where he was observed entering the juice bar with a bag that he removed from the FRANCIS Vehicle. When FRANCIS exited the juice bar he was empty handed.

        v.    Fifth, FRANCIS traveled to another location in Manhattan and provided an unknown individual a paper bag. FRANCIS then drove back to the vicinity of the FRANCIS Apartment.

        c.    Based on my review of information from the Car Tracker, I have learned that during the past several weeks FRANCIS continued to travel from the FRANCIS Apartment to Location-1 in the FRANCIS Vehicle. I believe these trips, like the trips described above, are for the distribution of narcotics and narcotics proceeds and to further the activities of the DTO. Such trips include, for example: (i) on or about November 2, 2020, November 4, 2020, November 5, 2020 and November 6, 2020, the Car Tracker information indicates that the FRANCIS Vehicle traveled from the vicinity of the FRANCIS Apartment to Location-1, among other places; (ii) on or about November 13, 2020 and November 15, 2020, the Car Tracker information indicates that the FRANCIS Vehicle traveled from the vicinity of the FRANCIS Apartment to Location-1, among other places; (iii) on or about November 16, 2020, the Car Tracker information indicates that the FRANCIS Vehicle traveled from the vicinity of the FRANCIS Apartment to Upper Manhattan, approximately 20 blocks north of Location-1, among other places; and (iv) on or about November 17, 2020, the Car Tracker information indicates that the FRANCIS Vehicle traveled from the vicinity of the FRANCIS Apartment to Location-1, among other places.

### THE OCTOBER 16, 2020 STOP OF THE FRANCIS VEHICLE

        10.    On or about October 15, 2020, at approximately 9:06 PM, CC-1, using the CC-1 Telephone, called RYAN FRANCIS, the defendant, using the FRANCIS Telephone. Based on my review of a draft synopsis of that call, I have learned that during the call, CC-1 asked FRANCIS, in substance and in part, how much more he owes FRANCIS for the order of sweaters, "the 2 cases of sweaters." FRANCIS replied "54." CC-1 replied "alright" and then stated he will see him "tomorrow" — i.e., October 16, 2020. FRANCIS further stated that another individual has them for "2-4" and that FRANCIS has "3-4." CC-1 inquired how they look. Thereafter, FRANCIS asked if CC-1 wanted FRANCIS to bring "it" to him. CC-1 replied he is not around right now.

a. Based on my training and experience, and involvement in this investigation, including my review of other intercepts, I believe the reference to "sweaters" refers to narcotics. I believe this because CC-1 and FRANCIS appear to use code to refer to narcotics. For example, as described *supra*, CC-1 requested "2" "Barry White."[2] Thus, I believe that the conversation described above appears to be FRANCIS inquiring whether CC-1 wants a re-supply of narcotics and the two discussing potential amounts.

11. On or about October 16, 2020, the next day, at approximately 4:00 p.m., CC-1, using the CC-1 Telephone, called RYAN FRANCIS, the defendant, using the FRANCIS Telephone. Based on my conversations with individuals monitoring the intercepts of communications over the CC-1 Telephone, and my review of the recording, I have learned that during this call, CC-1 asked FRANCIS if he is around, and the two agreed to meet at approximately 7:30 p.m. During the call, CC-1 said, in substance and in part, "I got to bring the money for it but I gotta see what it is, and if it not good I am going to send it back." FRANCIS replied, in sum and substance, that it looked so good he did not want to take it out of the package. Based on my training and experience this appears to be a conversation arranging a narcotics transaction.

12. After the previously described phone call, on or about October 16, 2020, law enforcement officers observed RYAN FRANCIS, the defendant, leave the apartment building in which the FRANCIS Apartment is located and enter the FRANCIS Vehicle. Thereafter, at approximately 10:10 p.m., law enforcement officers conducted a ruse stop of the FRANCIS Vehicle in the vicinity of 142nd Street and 8th Avenue in Manhattan, New York. FRANCIS gave consent to search the vehicle except for the trunk. The agents brought a narcotics-detection canine to the vehicle, which reacted to the driver's seat and the trunk in a manner consistent with a positive indication or alert for narcotics odors. The agents opened the trunk and found a vacuum-sealed package, that upon later inspection, contained what appears, based upon the agents' training and experience, to be approximately one pound of marijuana. The agents brought the vehicle to a nearby police precinct and engaged

---

[2] In addition, it would be unusual for two individuals to discuss "sweaters" in the manner described in this paragraph, and as discussed below, a subsequent conversation provides additional evidence that the "sweaters" are actually narcotics because in that conversation CC-1 asks if they are "good" which, based on my training and experience, is a question narcotics traffickers ask to assess the strength of narcotics they may purchase.

9

a more thorough search of the vehicle, but did not discover any additional narcotics. FRANCIS was released without charges.

13. On or about October 17, 2020, at approximately 1:13 a.m. (i.e., shortly after the car stop), CC-1, using the CC-1 Telephone, received a call from RYAN FRANCIS, the defendant, using the FRANCIS Telephone. The following conversation occurred, in substance and in part, and I have reviewed a draft transcript of the conversation:

**CC-1:** Yo?

**FRANCIS:** Yo, you believe that... [STAMMERS] you believe that those n[-----] just toke me in for that shit, bro? [MUMBLES] [U/I] and all that shit. Ah, it's over for me. What up? [U/I]...
[VOICES OVERLAP]

**CC-1:** What happened?

[VOICES OVERLAP]

**FRANCIS:** ...homie, I just got off. N[-----] just did locked me up. I'm just getting off; coming down Eighth (8th). I was up on fucking Eighth (8th) and Fifty (50)... and Fifty (50)... and Forty-Eighth (48th) Street shit.

**CC-1:** Forty-eighth (48th) Street?

**FRANCIS:** The precinct, n[----].

**CC-1:** You just got out the precinct?

**FRANCIS:** I just got here. N[----] caught me with my [U/I] coming down. Yeah, luckily I ain't come off [U/I].

**CC-1:** Wha-what?

**FRANCIS:** What?

**CC-1:** Where you at right now?

**FRANCIS:** I can't hear you.

| | |
|---|---|
| **CC-1:** | I said, "Where you at right now?" |
| **FRANCIS:** | I'm on... I-I'm just about to... I'm on One Forty-Seventh (147th) [PH] and Eighth (8th). |
| **CC-1:** | Come to the school [PH], right quick, man. |
| **FRANCIS:** | Alright, right quick. Real quick, a'right, a'right. |

    a. Based on my training and experience, and my involvement in this investigation, including their review of prior and subsequent intercepts, I believe that FRANCIS told CC-1 that FRANCIS had been arrested ("just did locked me up"). FRANCIS said he had been caught with something ("caught me with my [U/I] coming down"), but it was fortunate that FRANCIS did not have or do something ("luckily I ain't come off [U/I]"). CC-1 asked where FRANCIS was ("Where you at right now?") and told him to meet CC-1 by the "school."

    b. Based on my training and experience, as well as my involvement in this investigation, and the October 17, 2020 phone call described in the paragraph immediately above, it appears to me that FRANCIS was relieved he did not have other narcotics in his possession--("luckily I ain't come off [U/I]"). Because I believe that FRANCIS supplies cocaine or crack-cocaine to CC-1, I believe that FRANCIS was relieved he did not possess cocaine or crack-cocaine when he was stopped by law enforcement officers on or about October 16, 2020.

<u>SEARCH OF THE FRANCIS APARTMENT</u>

    14. On or about December 2, 2020, pursuant to a search warrant signed by Hon. Cathy L. Waldor, United States Magistrate Judge for the District of New Jersey, law enforcement officers conducted a search of the FRANCIS Apartment. Inside the FRANCIS Apartment law enforcement officers located, among other things, (i) a Colt .45 firearm with two fully loaded magazines (pictured below); (ii) approximately $35,000 in United States currency (pictured below); (iii) a small quantity of marijuana, which appears consistent with personal use. RYAN FRANCIS, the defendant, was also present in the FRANCIS Apartment and at that time was placed under arrest.



      a.    Based on my training and experience, and involvement in this investigation, I believe that the $35,000 in bulk cash found in the FRANCIS Apartment appears to be narcotics proceeds related to FRANCIS's involvement in the DTO and that the firearm is used by FRANCIS to protect the narcotics proceeds in the FRANCIS Apartment as well as himself given his involvement in the DTO.

WHEREFORE, deponent respectfully requests that RYAN FRANCIS, the defendant, be imprisoned or bailed, as the case may be.

/s/ Michael Hill
_____
MICHAEL HILL
Special Agent
Homeland Security Investigation

Sworn to me through the transmission
of this Affidavit by reliable electronic
means, pursuant to Federal Rules of
Criminal Procedure 41(d)(3) and 4.1, this
2nd day of December, 2020

_____
THE HONORABLE KATHARINE H. PARKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK